RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SAVERS PROPERTY AND CASUALTY INSURANCE CO.;
STAR INSURANCE COMPANY; AMERITRUST
INSURANCE CORPORATION; WILLIAMSBURG
NATIONAL INSURANCE CO.;

        *Plaintiffs-Appellees,*

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURG, PA,

        *Defendant-Appellant.*

Nos. 13-2288/2289

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:13-cv-13807—Victoria A. Roberts, District Judge.

Argued: March 21, 2014

Decided and Filed: April 9, 2014

Before: COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael M Conway, FOLEY & LARDNER LLP, Chicago, Illinois, for Appellant. Keefe A. Brooks, BROOKS WILKINS SHARKEY & TURCO PLLC, Birmingham, Michigan, for Appellees. **ON BRIEF:** Michael M Conway, Jonathan W. Garlough, FOLEY & LARDNER LLP, Chicago, Illinois, Scott T. Seabolt, FOLEY & LARDNER LLP, Detroit, Michigan, for Appellant. Keefe A. Brooks, BROOKS WILKINS SHARKEY & TURCO PLLC, Birmingham, Michigan, Stephanie A. Douglas, BUSH SEYFERTH & PAIGE PLLC, Troy, Michigan, for Appellees.

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

---

## OPINION

---

COLE, Circuit Judge.   National Union Fire Insurance Company ("National Union") appeals the grant of a preliminary injunction that halted an ongoing arbitration proceeding with Savers Property and Casualty Insurance Company, et al. (collectively, "Meadowbrook"). Because arbitration's essential virtue is resolving disputes straightaway, judicial review of arbitral awards is extremely narrow and exceedingly deferential.   In the absence of a final arbitration award, the district court should not have interjected itself into this private dispute. Accordingly, we reverse the judgment, dissolve the injunction, and remand for dismissal.

## I. BACKGROUND

### A. Factual Background

The underlying dispute that gave rise to this arbitration stems from a contract for reinsurance (the "Treaty") between National Union and Meadowbrook.   The Treaty required both parties to submit any reinsurance disputes to a three-member arbitration panel that would "make its decision with regard to the custom and usage of the insurance and reinsurance business" after entertaining evidence and conducting a hearing.   The majority decision of the panel was to be final and binding upon all parties to the proceeding, and either side could seek judicial confirmation in any court of competent jurisdiction.   Meadowbrook initiated this arbitration in February 2011 to settle matters surrounding its alleged practice of overbilling National Union for certain reinsurance programs.

As is customary in the reinsurance industry, the arbitration clause from the Treaty established a tripartite method of arbitration.   Under this system, the panel was to be comprised of "two arbitrators and an umpire" who were "active or retired disinterested officials of the insurance or reinsurance companies, or Underwriters at Lloyd's, London, not under the control of either party to this Agreement."   Each party was to appoint its own arbitrator, and then the two party-appointed arbitrators would select a neutral umpire.   In the event that the party-appointed arbitrators disagreed in selecting an umpire, each side was to submit a list of three candidates,

from which the opposing arbitrator would strike two. The umpire would then be chosen by lot from the remaining name on each list.

National Union named Jonathan Rosen as its arbitrator, and Meadowbrook named Rex Schlaybaugh. After the two men deadlocked in selecting an umpire, the parties exchanged slates of candidates and asked them to complete a questionnaire detailing their experience and connections with the parties and their arbitrators. Thomas Greene—who was ultimately selected as umpire—disclosed that he was a personal friend of National Union's arbitrator. Greene also disclosed that, like Rosen, he was a member of the reinsurance industry group ARIAS, a not-for-profit corporation that publishes guidelines and best practices for reinsurance arbitrations. Despite Greene's connections to Rosen, Meadowbrook selected Greene from the slate of individuals put forward by National Union, and after casting lots, he was named umpire.

The panel held an organizational meeting on August 1, 2012, at which it adopted the first of two scheduling orders with identical language regarding ex parte communications. Those orders stated, "*Ex parte* communications with any member of the Panel shall cease upon the filing of the parties' initial pre-hearing briefs." The filing date for pre-hearing briefs and the attendant cut-off date for ex parte communications was June 14, 2013. Soon after, the panel conducted a hearing, and on July 23 issued a unanimous "Interim Final Award" resolving all issues of liability in favor of National Union.

The panel did not, however, calculate a final damages award at that time. Instead, the panel ordered Meadowbrook to pay National Union $1,950,680.48 for damages that were "capable of immediate calculation," and, in an effort to mete out a final award, ordered Meadowbrook to provide supporting documentation with respect to other reinsurance programs and their retained risk. The panel also ordered Meadowbrook to reimburse National Union for its attorneys' fees and costs. The panel denied all other requests for relief, ordered Meadowbrook to pay the sum-certain damages within fourteen days, and retained jurisdiction only to "adjudicat[e] those items requiring additional submissions"—i.e., to calculate National Union's damages prior to issuing a final arbitration award.

The Interim Final Award was silent with respect to the ban on ex parte communications that had gone into effect on June 14. Nevertheless, National Union's attorney and Arbitrator

Rosen resumed ex parte communications immediately following issuance of the award, which National Union maintains was permissible under the panel's scheduling orders and the customs and practices of the reinsurance industry. National Union disclosed these very communications when it submitted its Bill of Costs to Meadowbrook and the panel. Meadowbrook, however, argues that the communications were prohibited by the scheduling orders.

On August 6, Meadowbrook filed a supplemental submission to the panel in response to Paragraph 4 of the Interim Final Award, which had directed Meadowbrook to provide supporting documentation so that the panel could calculate National Union's final damages. After consulting with Arbitrator Rosen, National Union's attorney filed a motion to strike Meadowbrook's submission, alleging that the document was "insufficient." Umpire Greene responded to the parties' filings in an August 12 order signed, "For the Panel." In that order, Greene stated that "[t]he Panel . . . by majority, strikes [Meadowbrook's submission] in its entirety as being non-responsive to and non-compliant with Paragraph 4 of the Interim Final Award." The order instructed Meadowbrook to file a conforming submission or risk a damages calculation based solely on National Union's submissions.

The next day, Meadowbrook filed an emergency motion to clarify the panel's prior ruling and to extend the deadline for its replacement submission. Greene again responded in an August 13 order signed, "For the Panel." Greene stated that "the majority rules as follows," before clarifying what documentation must be submitted and granting the request for additional time to replace the stricken submission. Meadowbrook was given until August 19, 2013, to submit the supporting documentation the panel had requested in its Interim Final Award.

Meadowbrook alleges that both panel orders disenfranchised Schlaybaugh, who was on vacation at the time the orders were adopted and did not participate in deliberations on either matter. National Union rejects any contention that Schlaybaugh was disenfranchised; National Union argues that Greene issued the orders without Schlaybaugh's participation because swift action was required, and even then, only after repeated attempts to communicate with him proved fruitless. National Union also notes that Schlaybaugh's participation would not have altered the orders because under the Treaty, a two-member majority may rule for the panel.

## B. Procedural Background

Unsatisfied with the panel's procedural orders, Meadowbrook filed a complaint in Michigan state court seeking to vacate the Interim Final Award on the grounds that Umpire Greene and Arbitrator Rosen exceeded their authority under the Treaty and that Rosen displayed evident partiality. The crux of Meadowbrook's complaint was that Rosen failed to disclose that he had been a guest speaker at a conference with National Union's attorney during the course of the arbitration. Meadowbrook alleged it would have moved to disqualify Rosen and Greene had it known of Rosen's speaking engagements. When Meadowbrook learned that Rosen and National Union's attorney had resumed their ex parte communications following issuance of the Interim Final Award, Meadowbrook amended its state-court complaint to reflect those facts.

Simultaneously, Meadowbrook protested the panel's orders within the arbitration proceeding itself by filing a motion for reconsideration and a motion to stay all proceedings. Meadowbrook raised the same arguments it pressed in state court—namely, that Rosen failed to disclose his participation in a reinsurance industry educational seminar held at the law offices of National Union's attorney, and that Rosen and National Union's attorney engaged in improper ex parte communications following issuance of the Interim Final Award.

By a 2-1 vote, the arbitration panel denied both motions. As to Meadowbrook's first argument, regarding disclosure of Rosen's speaking engagements, Greene and Rosen ruled for the panel as follows:

> The Panel sees no merit in Meadowbrook's complaint that Arbitrator Rosen did not disclose his participation at the AIRROC regional education seminar held at Foley & Lardner's offices earlier this year. That [National Union's attorney] also participated at AIRROC's invitation as a panelist at that seminar in a segment separate and distinct from Mr. Rosen's segment is of absolutely no moment or relevance in relation to this proceeding and did not, in the Panel's view, constitute a matter requiring disclosure . . . .

Greene and Rosen also rejected Meadowbrook's claim that Rosen violated the rules governing ex parte communications, ruling as follows:

> The Panel sees no merit in Meadowbrook's complaint that Arbitrator Rosen's communications with [National Union's attorney] and his colleagues after issuance of the Interim Final Award constituted a breach of the rules

governing *ex parte* contact in this proceeding. A review of the Organizational Meeting transcript and Scheduling Orders entered in connection with this proceeding readily establish that the prohibition on *ex parte* contact came to an end upon the Panel ruling on the merits of this dispute. That was occasioned upon the issuance of the Interim Final Award, which fully and finally resolved all liability aspects attendant to this dispute. . . . This conclusion not only comports with the parties' expressed intentions relative to *ex parte* contact with the party appointed arbitrators, but is consistent with the Panel's intent and understanding of its orders governing *ex parte* contact as well as the customs and practices existing in the conduct of reinsurance arbitrations.

Schlaybaugh dissented. He felt that the scheduling orders were clear on their face and that the ex parte communications between Rosen and National Union's attorney violated those orders. Moreover, Schlaybaugh was "troubled" that the other panel members issued the underlying procedural orders without his participation and input. Accordingly, he would have found a violation of the scheduling orders, stayed the arbitration, and ordered limited discovery "to determine the extent and subject of all ex parte communications and affiliations that may exist or existed and have not been disclosed."

After the panel denied Meadowbrook's motions, National Union responded to Meadowbrook's revised Paragraph 4 submission. National Union requested that the panel order Meadowbrook to pay reinsurance reimbursements in excess of $25 million dollars. Faced with this potential liability, Meadowbrook moved the state court to stay the arbitration in order to challenge the fundamental fairness of the proceedings.

National Union then removed the case to federal district court based on diversity of citizenship. Despite acknowledging that courts are generally prohibited from reviewing arbitration proceedings until a final award has been issued, the district court determined it could review the matter by re-casting Meadowbrook's challenge as a breach of contract dispute regarding the rules under which the arbitration was to proceed. The court then concluded that injunctive relief was proper because Meadowbrook was likely to suffer irreparable harm from such a sizeable financial liability and was likely to succeed on the merits "in a breach of contract action" predicated on Schlaybaugh's purported disenfranchisement and Rosen's ex parte communications. The court also concluded that there would be no substantial harm to National

Union, and that public policy favored issuance of the injunction. Accordingly, the court enjoined the panel from issuing any further orders without the court's approval.

## C. The Instant Appeal

National Union timely appealed, arguing that under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, parties to an ongoing arbitration may not challenge the fairness of the proceedings or the partiality of the arbitrators until after the conclusion of the arbitration and the rendition of a final award. In the alternative, National Union argues that the district court abused its discretion in granting the preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and 9 U.S.C. § 16(a)(2) to consider National Union's appeal.

## II. STANDARD OF REVIEW

We review de novo whether a district court may entertain a motion for preliminary injunctive relief in an arbitration proceeding. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1378 (6th Cir. 1995). We review the grant of a preliminary injunction for abuse of discretion, examining the district court's legal conclusions de novo and its factual findings for clear error. *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). In this review, we look to the same four factors the district court considered in determining whether to grant the injunction, and the plaintiff bears the burden of establishing its entitlement to the relief requested. *Autocam Corp. v. Sebelius*, 730 F.3d 618, 624 (6th Cir. 2013).

## III. ANALYSIS

## A. Choice of Law

At the outset, the parties disagree (at times) over the substantive law we must apply in this appeal. National Union argues that the FAA applies. Meadowbrook asserts, however, that under the choice-of-law provisions from the Treaty, Michigan law governs our review. Despite this assertion, Meadowbrook grounds its arguments almost entirely on federal caselaw interpreting the FAA. The district court's analysis was equally muddled—relying, at times, on both the FAA and Michigan law to support its review and issuance of the injunction.

Although the FAA generally preempts inconsistent state laws and governs all aspects of arbitrations concerning "transaction[s] involving commerce," parties may agree to abide by state rules of arbitration, and "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA." *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522–23 (6th Cir. 2012) (quoting 9 U.S.C. § 2 and *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *see also Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302–03 (6th Cir. 2008); *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 288–89 (3d Cir. 2010). The central inquiry in this choice-of-law determination is whether the parties unambiguously intended to displace the FAA with state rules of arbitration. *Muskegon*, 462 F. App'x at 523. Here, the parties did just that. Under the Treaty's general choice-of-law provision and the arbitration clause, both parties agreed that any arbitration shall be "subject to the laws of the State of Michigan." The Treaty neither refers to the FAA nor otherwise suggests that the parties sought to invoke its provisions. Accordingly, the parties unambiguously intended to displace the federal standard with Michigan law, and Michigan law governs our review. *Id.*

Nevertheless, because the Michigan Arbitration Act, Mich. Comp. Laws § 600.5001 *et seq.*,[1] and Michigan Court Rule 3.602 are "almost identical to the FAA in all relevant respects," *Uhl*, 512 F.3d at 303, this choice-of-law determination bears little impact on our analysis or disposition. As in *Uhl*, the statutory language at issue here is nearly identical under federal and state law. *Compare* 9 U.S.C. § 10(a), *with* Mich. Ct. R. 3.602(J)(2) (governing the vacatur of arbitration awards). Given the similarities between federal and state law, the lack of caselaw interpreting Michigan Court Rule 3.602 in the context of mid-arbitration judicial review, and the parties' heavy reliance upon cases applying the FAA, we will generally consider National Union's appeal with respect to cases interpreting the FAA. *See Uhl*, 512 F.3d at 303. However, we will consider specific application of Michigan law where the relevant provisions differ in substance.

---

[1]The Michigan Legislature enacted a uniform arbitration act in 2012 that repealed the state's previous arbitration regime. *See* Uniform Arbitration Act, 2012 Mich. Pub. Act No. 371 (codified at Mich. Comp. Laws §§ 691.1681–.1713). However, the Act provided that the old regime would govern arbitration proceedings commenced prior to July 31, 2013. Mich. Comp. Laws § 691.1713. We therefore look to that regime, which incorporated Michigan Court Rule 3.602, in this appeal. *See* Mich. Comp. Laws § 600.5021 (repealed 2012); Mich. Ct. R. 3.602(A) ("This rule governs statutory arbitration under MCL 600.5001-600.5035.").

**B.  Judicial Review was Improper Before Issuance of a Final Arbitration Award**

Based upon the text, structure, and purpose of the FAA, which all foster a speedy and less formal method of dispute resolution, we conclude that the district court erred in entertaining this interlocutory challenge to an ongoing arbitration proceeding.  Parties to an arbitration generally may not challenge the fairness of the proceedings or the partiality of the arbitrators until the conclusion of the arbitration and the rendition of a final award.  Because Meadowbrook's arbitration was ongoing, and because the panel had not yet issued a final award, the district court erred by prematurely interjecting itself into this private dispute.

Congress enacted the FAA in 1925 to counter widespread judicial hostility to private arbitration agreements.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  The overarching purpose of the FAA, evident in its text and structure, "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748.  This "body of federal substantive law of arbitrability" applies to any arbitration agreement within the coverage of the FAA and presumptively governs in both state and federal court.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Thus, we have long recognized that the FAA "manifests 'a liberal federal policy favoring arbitration agreements,'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24), and several states, including Michigan, have followed Congress's lead by enacting arbitration acts that largely mirror the FAA.  *See Uhl*, 512 F.3d at 303 ("Michigan's arbitration law is almost identical to the FAA in all relevant respects."); *see also* Phillip J. DeRosier, *Judicial Review of Arbitration Awards Under Federal and Michigan Law*, Mich. B.J., Feb. 2013, at 34, 36 ("[T]he Michigan court rules [governing arbitration] ostensibly mirror the FAA.").

Arbitration under the FAA is contract-driven and principally "a matter of consent." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *accord Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute." *AT&T Mobility*, 131 S. Ct. at 1749.  Moreover, the informality of arbitration "is itself

desirable" because it "reduc[es] the cost and increase[es] the speed of dispute resolution." *Id.* (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009)).

To maintain "arbitration's essential virtue of resolving disputes straightaway," courts may vacate an arbitration award "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal quotation marks omitted). As the Supreme Court has explained, "[i]f parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to more cumbersome and time-consuming judicial review process." *Id.* (internal quotation marks omitted). Accordingly, the FAA and Michigan's arbitration law contemplate only two stages at which courts may become involved in arbitration proceedings. At the outset of any dispute, the laws authorize courts to decide certain "gateway matters" of arbitrability, "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Id.* at 2068 n.2. (internal quotation marks omitted); *see* 9 U.S.C. §§ 3–4 (authorizing courts to entertain challenges to the arbitrability of a given dispute by granting motions to stay judicial proceedings or compel arbitration); Mich. Ct. R. 3.602(B)–(C) (same). Then, at the conclusion of an arbitration proceeding, courts are authorized to enter an order confirming, vacating, or modifying the award, but even so, awards may be disrupted only under narrow circumstances. *See* 9 U.S.C. §§ 9–11; Mich. Ct. R. 3.602(I)–(K); *Oxford Health Plans*, 133 S. Ct. at 2068.

Between these two stages, however, the laws are largely silent with respect to judicial review. Over the years, our court and several of our sister circuits have interpreted that silence and the overall structure of the FAA to preclude the interlocutory review of arbitration proceedings and decisions. *See Quixtar, Inc. v. Brady*, 328 F. App'x 317, 320 (6th Cir. 2009) ("[C]ourts generally should not entertain interlocutory appeals from ongoing arbitration proceedings."); *see also, e.g.*, *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) (observing "that judges must not intervene in pending arbitrations" and noting that "[r]eview comes at the beginning or the end, but not in the middle" of arbitration); *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 488 (5th Cir. 2002) ("We find no authority under the FAA for a court to entertain such challenges [to the arbitrator selection process or the unfairness of an arbitration] prior to [the] issuance of the arbitral award.");

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999) ("[F]airness objections should generally be made to the arbitrator, subject only to limited post-arbitration judicial review as set forth in section 10 of the FAA."); *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 903 (D.C. Cir. 1998) ("The Arbitration Act contemplates that courts should not interfere with arbitrations by making interlocutory rulings . . . ."); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995) ("By its own terms, § 10 [of the FAA] authorizes court action only after a final award is made by the arbitrator."); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 & n.4 (2d Cir. 1980) ("Under the Federal Arbitration Act . . . a district court does not have the power to review an interlocutory ruling by an arbitration panel. . . . Similarly, it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."); *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 541–42 (3d Cir. 1974) (same).

In addition to these textual and structural considerations, there are sound policy reasons—all of which support the purposes underlying the FAA—for generally withholding judicial review until the conclusion of an arbitration proceeding. *See, e.g.*, *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 874 (7th Cir. 2011) (observing that if parties could obtain interlocutory review of arbitral decisions, "[t]hat would be the end of arbitration as a speedy and (relatively) low-cost alternative to litigation"); *Gulf Guar. Life Ins.*, 304 F.3d at 492 ("[A] prime objective of arbitration law is to permit a just and expeditious result with a minimum amount of judicial interference . . . any other such rule could spawn endless applications to the courts and indefinite delay . . . ." (internal quotation marks omitted)); *Michaels*, 624 F.2d at 414 ("[A] district court should not hold itself open as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and delaying tactics in a proceeding that is supposed to produce a speedy decision." (internal quotation marks and ellipsis omitted)).

Under this statutory framework, Meadowbrook's request that the district court intervene to halt this ongoing arbitration proceeding was plainly improper. When the parties inked their reinsurance Treaty, they explicitly agreed to be bound by Michigan law, which mirrors the FAA

in all relevant respects, during any subsequent arbitration. By initiating this arbitration, Meadowbrook "thereby implicitly agreed to defer judicial review until after the conclusion of the . . . Arbitration." *Quixtar*, 328 F. App'x at 322. Only when the panel ruled against Meadowbrook did it think better of the arrangement and decide to "help itself to an interlocutory appeal." *Blue Cross*, 671 F.3d at 637. Tellingly, Meadowbrook acknowledged in its amended state-court complaint that "if it is determined that this action is premature because no 'final' award has been rendered, then this action should be dismissed without prejudice."

We agree with Meadowbrook's initial concern. Here, the arbitration panel issued an interim award resolving only the matter of liability; the panel retained jurisdiction to compute National Union's damages. Under these circumstances, the arbitration was not complete because there was no "final" award. *See, e.g.*, *Michaels*, 624 F.2d at 413–14 ("Generally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages."); *accord Union Switch & Signal Div. Am. Standard, Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 610–12 (3d Cir. 1990) (collecting cases and holding under "the complete arbitration rule" that an arbitration award is not final where it determines liability but not damages); *Millmen Local 550, United Bhd. of Carpenters & Joiners of Am. v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (same). Accordingly, Meadowbrook's action was premature.

## C. Interlocutory Judicial Review was Improper Under 9 U.S.C. § 2

The district court recognized the general prohibition on interlocutory review of arbitration proceedings but granted the injunction anyway under a strained reading of Meadowbrook's pleadings and 9 U.S.C. § 2. *See Star Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 13-13807, 2013 WL 5182745, at *4 (E.D. Mich. Sept. 12, 2013) (concluding that courts may conduct interlocutory review "if the [arbitration] agreement is subject to attack under general contract principles" (internal quotation marks omitted)). But on appeal, Meadowbrook does not argue that interlocutory review was proper under § 2. In fact, Meadowbrook has never invoked § 2, which pertains only to the revocability of an arbitration agreement under traditional contract defenses, as a basis to justify its request for injunctive relief.

Therefore, under the appellate waiver doctrine, "we need not review this aspect of the district court's decision." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 310–11 (6th Cir. 2005).

Nevertheless, we address this portion of the district court's decision to resolve any ambiguity over the type of judicial review that 9 U.S.C. § 2 does and does not permit.  In doing so, we conclude that the district court erred in relying on § 2 to permit interlocutory review of the arbitration proceedings.  Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also* Mich. Comp. Laws § 600.5001(2) (repealed 2012) (same).  This provision was intended to place arbitration agreements on the "same footing as other contracts" and thereby overcome judicial hostility to arbitration.  H.R. Rep. No. 68-96, at 1–2 (1924).  Accordingly, § 2 preserves "generally applicable contract defenses" to arbitration agreements, such as fraud or duress.  *See AT&T Mobility*, 131 S. Ct. at 1748.  By its limitation to grounds that justify "revocation of any contract," the text of § 2 simply provides that an arbitration agreement, like any other contract, is subject to rescission or invalidation if there is a defect in the underlying contract containing the agreement to arbitrate.  *Corey v. NYSE*, 691 F.2d 1205, 1212 (6th Cir. 1982).

Nothing in the text or history of the FAA suggests that § 2 was intended to displace § 10's limitation on judicial review of non-final awards.  *Id.* Challenging the fairness of an arbitration proceeding or the partiality of an arbitrator is different in kind than challenging the underlying contract that contained the agreement to arbitrate.  *See Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) ("Although the FAA provides that a court can vacate an award where there was evident partiality or corruption in the arbitrators, it does not provide for pre-award removal of an arbitrator.  Thus, an agreement to arbitrate before a particular arbitrator may not be disturbed, unless the agreement is subject to attack under general contract principles as exist at law or in equity." (citations, brackets, and internal quotation marks omitted)).  As the Fifth Circuit explained, courts may adjudicate claims regarding the partiality of an arbitrator prior to issuance of a final award "*only* when there is a claim . . . that there was 'fraud in the inducement' or some other 'infirmity in the contracting process' regarding the parties' establishing arbitral qualifications" that could serve to invalidate the agreement to arbitrate.  *Gulf*

*Guar. Life Ins.*, 304 F.3d at 491 (emphasis added) (quoting *Aviall*, 110 F.3d at 896).  In contrast, "a court may not entertain [pre-award] disputes over the qualifications of an arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue."  *Id.*

In this case, the district court's decision falls on the wrong side of the line.  *See Star Ins. Co.*, 2013 WL 5182745, at *4 ("[T]his dispute surrounds a contract provision in the Treaty establishing the rules under which the arbitration is to proceed . . . .  Whether that contract provision has been breached is at issue.").  Meadowbrook never alleged that the Treaty itself was unenforceable under traditional contract defenses; nor did Meadowbrook ever avail itself of the provisions from 9 U.S.C. § 2.  Therefore, the district court erred in relying on that provision to entertain Meadowbrook's premature challenge to the fairness of the proceedings and the partiality of the arbitrators.  Those issues are properly raised in a motion to vacate under 9 U.S.C. § 10 or Michigan Court Rule 3.602(J) following the conclusion of the proceedings and the issuance of a final arbitration award.  *See Gulf Guar. Life Ins.*, 304 F.3d at 490–91.

## D.  Meadowbrook's Arguments in Support of Interlocutory Review are Without Merit

Meadowbrook fails to cite a single decision from this circuit or any other in which a court halted an ongoing arbitration proceeding under circumstances similar to those presented here.  Instead, Meadowbrook points to a string of cases involving judicial review of interlocutory arbitral awards on the availability of class arbitration and argues that those cases permit the type of mid-arbitration review at issue here.  We are not persuaded.

Meadowbrook's principal argument is that because the Supreme Court has "interjected itself" into ongoing arbitrations in other contexts, the district court was likewise permitted (if not required) to do so here, provided that Article III ripeness requirements were satisfied.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010); *see also Oxford Health Plans*, 133 S. Ct. at 2068.  What Meadowbrook overlooks is that both cases involved arbitration agreements that expressly provided for interlocutory judicial review of certain arbitral decisions.  Thus, at the time the parties formed their contracts, they agreed to judicial review prior to the issuance of a final arbitration award.  But that is not the class of cases to which Meadowbrook's arbitration belongs.

By way of example, in *Stolt-Nielsen*, the Supreme Court silently accepted that even during an ongoing arbitration, 9 U.S.C. § 10 represents a proper vehicle to challenge an interlocutory arbitration award on the availability of class arbitration, assuming ripeness. *See* 559 U.S. at 670 & n.2; *see also Oxford Health Plans*, 133 S. Ct. at 2067–68 (entertaining an appeal from a motion to vacate an arbitrator's interlocutory award on the availability of class arbitration). But in *Stolt-Nielsen*, the parties expressly agreed that their arbitration would be governed by the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which incorporate the AAA's Supplementary Rules for Class Arbitrations. *Stolt-Nielsen*, 559 U.S. at 668; *see also Oxford Health Plans*, 133 S. Ct. at 2067. The AAA's Supplementary Rules in turn provide for two stages of interlocutory judicial review: once after the arbitrator determines, as a threshold matter, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award") and again after the arbitrator determines if the arbitration should indeed proceed as a class arbitration (the "Class Determination Award").[2]

Given the contractual nature of arbitration, it is no surprise that the Supreme Court has enforced these arbitration agreements, which call for interlocutory judicial review, according to their terms. *See Rent-A-Center*, 130 S. Ct. at 2776 ("The FAA reflects the fundamental principle that arbitration is a matter of contract. . . . The FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms."). Our own caselaw tracks this policy of permitting interlocutory judicial review *where the parties' arbitration agreement expressly provides for it*, assuming other Article III requirements are satisfied. *See Dealer Computer Servs., Inc. v. Dub Herring Ford (DCS-II)*, 623 F.3d 348 (6th Cir. 2010) (accepting that the district court could consider a motion to vacate a Class Determination Award under 9 U.S.C. § 10 *if* the motion satisfied ripeness concerns); *Dealer*

---

[2]Supplementary Rule 3 states, "The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Am. Arbitration Ass'n, Supplementary Rules for Class Arbitrations, Rule 3 (2003), *available at* http://www.adr.org/aaa/ShowPDF?url=/cs/groups/commercial/documents/document/dgdf/mda0/~edisp/adrstg_0041 29.pdf [hereinafter "Supplementary Rules"]. Rule 5 likewise provides, "The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Supplementary Rules, Rule 5(d).

*Computer Servs., Inc. v. Dub Herring Ford (DCS-I)*, 547 F.3d 558 (6th Cir. 2008) (holding the same for Clause Construction Awards). Like the parties in *Stolt-Nielsen* and *Oxford Health Plans*, the parties in the *DCS* line of cases agreed in their underlying arbitration agreement to be bound by the AAA's Commercial Arbitration Rules, including the Supplementary Rules. *DCS-II*, 623 F.3d at 349–50; *DCS-I*, 547 F.3d at 559, 562. Thus, the *DCS* parties likewise agreed to interlocutory judicial review of certain arbitral decisions. *See* Supplementary Rules 3, 5(d).

Meadowbrook draws the wrong lesson from these cases and assumes that because its request for relief was purportedly ripe, the district court was empowered to conduct interlocutory judicial review of an ongoing arbitration proceeding. On the contrary, ripeness is a *necessary* condition to confirming or vacating an interlocutory arbitral ruling, just as ripeness is a necessary condition for pursuing any case in federal court. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 579–80 (1985); *Bigelow v. Mich. Dept. of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992). But ripeness alone is not a *sufficient* condition for interlocutory judicial review of arbitral decisions. Absent express or implied consent in the underlying agreement to arbitrate, federal courts may not graft a provision for interlocutory judicial review onto the otherwise straight-forward regime contemplated by the FAA and the Michigan Arbitration Act. Both laws generally call for judicial review only at the beginning of an arbitration, to decide certain gateway matters of arbitrability, or at the end of an arbitration, to confirm, vacate, or modify a final arbitration award. Where the parties agree to arbitrate a matter under either the FAA or the Michigan Arbitration Act *alone*, as National Union and Meadowbrook did here, we must enforce their contract according to its terms. *See Rent-A-Center*, 130 S. Ct. at 2776.

## D.  This Award was Not "Final" for Purposes of *Island Creek Coal Sales*

Finally, we acknowledge that our court does not exalt form over function in determining whether an arbitration award is "final" for purposes of judicial review. *Island Creek Coal Sales Co. v. City of Gainsville, Fla.*, 729 F.2d 1046, 1049 (6th Cir. 1984) (holding that an "interim award" that finally and definitively disposed of a separate, discrete, self-contained issue may be confirmed "notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration" (internal quotation marks omitted)), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000).

But Meadowbrook does not argue that the Interim Final Award or the panel order denying Meadowbrook's motion for reconsideration and motion to stay the proceedings qualifies as a "final" award under *Island Creek Coal Sales*. Nor could Meadowbrook. None of the awards in question "finally and definitively dispose[d] of a separate independent claim." *Id.* Accordingly, the awards fail to satisfy the complete arbitration rule, and judicial review was improper at this stage of the proceedings.

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court, dissolve the injunction, and remand the case for dismissal without prejudice. This is not to suggest that Meadowbrook is without remedy, or that the arbitrators' decision-making will forever be protected from judicial review. Meadowbrook is entitled to its day in court to challenge the fairness of the proceedings and the partiality of the arbitrators—just not until the panel has concluded its work and issued a final award.