**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 3, 2020

*Stephen, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 3, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| EVETTE BURGESS, | ) | |
| | ) | No. 98083-7 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| LITHIA MOTORS, INC.; BMW OF | ) | |
| SPOKANE d/b/a CAMP AUTOMOTIVE, | ) | |
| INC. d/b/a BMW OF SPOKANE, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | Filed: September 3, 2020 |

JOHNSON, J.—This case involves the availability of judicial review during ongoing contractual arbitration proceedings conducted under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Evette Burgess and Lithia Motors entered into arbitration to resolve an employment dispute. During arbitration proceedings, Burgess filed a motion with the court to terminate arbitration, alleging that Lithia and the arbitrator breached the arbitration agreement. The superior court denied Burgess's motion, citing a lack of jurisdiction, and certified the matter for direct review, which we granted. We affirm the superior court's order. Under the FAA, we

hold that judicial review is limited to deciding gateway disputes, which concern enforceability of the arbitration clause, and addressing the award after arbitration.

FACTS

In January 2018, Burgess filed suit in Spokane County Superior Court against Lithia based on claims of discrimination, harassment, and wrongful termination. Burgess initiated discovery under the court's supervision. In early February, Lithia requested that the parties move to arbitration per the terms of an arbitration clause that Burgess had signed as a condition to employment. Neither party challenged the validity of the arbitration clause.[1]

In July 2018, the parties agreed to arbitration. The parties entered into arbitration independently, not by court order, per the terms of the earlier arbitration clause. The arbitration provision stated, "The claims outlined shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the Federal Rules of Civil Procedure [FRCP] and Rules of Evidence [FRE]." Clerk's Papers (CP) at 293. Burgess confirmed with the arbitrator that she "agree[d] to the FRCP and FRE requirements." CP at 349.

During arbitration, Burgess claims that Lithia failed to respond in a timely manner to interrogatories. At one point, Lithia provided general objections in

---

[1] The record contains written communications between the two parties where Burgess indicates some portions of the arbitration agreement may be unconscionable. However, no formal challenges to the enforceability of the arbitration clause were presented to the court.

response to Burgess's first interrogatories and requests for production. Lithia largely asserted that the discovery requests were privileged and conditioned production on "a mutually agreed protective order" and noted that a privilege log would be forthcoming. CP at 120.

In August 2018, Burgess filed a motion with the arbitrator to compel Lithia's answers to the first set of discovery. Citing FRCP 34, Burgess alleged that Lithia's responses were untimely, inadequate, and made in bad faith. She also argued that Lithia waived its right to a privilege log. The arbitrator denied Burgess's motions. He found that Lithia, although untimely, provided answers to the first set of discovery, and he ordered a conference to resolve the bad faith allegations. The arbitrator also found that Lithia did not waive its right to seek a protective order and directed the parties to confer.

After this ruling, Burgess filed in superior court "Plaintiff's Motion to Vacate Arbitrator's Order Denying Discovery, Terminate Arbitration, and Issue a Case Scheduling Order." CP at 48. Burgess alleged that Lithia breached the arbitration agreement by failing to comply with discovery deadlines under FRCP 34 and the objection requirements of FRCP 33(b)(4). She also argued that the arbitrator's ruling constituted a breach of the agreement by failing to enforce the FRCP.

The superior court denied Burgess's motion, ruling that

2. The arbitration clause in this case is enforceable.

. . . .

5. This superior court is therefore prohibited from addressing Plaintiff's argument as to alleged breaches by Lithia and the Arbitrator in the course of arbitration as it does not have jurisdiction to do so.

CP at 612. The court granted Burgess's request to certify the matter for review under RAP 2.3(b)(4). The court also certified the following question:

Does the superior court have jurisdiction to address an employee's contractual breach argument based upon acts alleged in the course of binding arbitration, or is the superior court's jurisdiction in a contractual arbitration limited to issues occurring before and after—but not during—the proceeding. Specifically, is the superior court's jurisdiction limited to ruling on whether there is an enforceable arbitration clause at the inception of arbitration and addressing the arbitration award at its conclusion?

CP at 613. The Court of Appeals granted discretionary review and certified the case to this court pursuant to RCW 2.06.030 and RAP 4.4.

ANALYSIS

The parties elected to resolve this dispute through binding arbitration under the FAA. We are asked whether and to what extent the FAA authorizes a court to review a challenge to the arbitration agreement once the claims have been submitted to arbitration. Burgess contends that section 2 of the FAA authorizes the court to resolve a breach of the arbitration agreement challenge during ongoing arbitration proceedings. Lithia argues that the FAA limits court involvement to the "bookends" of arbitration: initial enforceability and review of the final arbitration award.

4

The majority of federal circuits that have reviewed this issue determined that the FAA generally restricts judicial involvement to the bookends of arbitration and precludes any judicial intervention once arbitration begins. *In re Sussex*, 781 F.3d 1065, 1073 (9th Cir. 2015); *see also Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 716 (6th Cir. 2014) ("Parties to an arbitration generally may not challenge the fairness of the proceedings or the partiality of the arbitrators until the conclusion of the arbitration and the rendition of a final award."); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) ("Review comes at the beginning or the end, but not in the middle."); *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred."); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2nd Cir. 1980).

The interplay between judicial and arbitration proceedings under the FAA are defined by several statutory provisions. Section 2 of the FAA states that a written agreement to submit an existing controversy to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA directs that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 3 of the FAA authorizes courts to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Section 9 of the FAA states that "any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Sections 10 and 11 of the FAA specify the limited grounds for which a court may vacate, modify, or correct an arbitration award. Taken together, these provisions indicate that arbitration is conducted primarily with the arbitrator except for the circumstances discussed above, where a court's authority is expressly delineated.

Under a similar set of facts, the Sixth Circuit concluded that "[b]ased upon the text, structure, and purpose of the FAA, which all foster a speedy and less formal method of dispute resolution," courts may not entertain an interlocutory challenge to an ongoing arbitration proceeding.[2] *Savers*, 748 F.3d at 716. In *Savers*, the parties

---

[2] The *Savers* court analyzed the dispute under the Michigan Arbitration Act, but noted that the Michigan laws were "'almost identical to the FAA in all relevant respects.'" *Savers*, 748 F.3d

completed an arbitration hearing and the arbitration panel issued an "interim final award" that resolved liability issues but did not calculate or issue a final damages award. One of the parties requested that the court stay the arbitration proceedings and challenged the fundamental fairness of the proceeding, including whether the arbitrators exceeded their authority, displayed impartiality, and violated ex parte prohibitions. The trial court framed the issue as a breach of contract dispute and ruled on the matter, enjoining the ongoing arbitration proceedings.

The *Savers* court determined that the language of the FAA contemplated two stages where courts are authorized to review disputes regarding arbitration proceedings. First, sections 2, 3, and 4 of the FAA authorize courts to decide "gateway disputes" regarding the validity or applicability of arbitration agreements. Section 2 of the FAA "preserves 'generally applicable contract defenses' to arbitration agreements" and allows courts to rescind or invalidate arbitration contracts where the contract contains an underlying defect. *Savers*, 748 F.3d at 719; *see* 9 U.S.C. § 2. Once the court determines a valid arbitration agreement exists, the court must enforce it. The following sections, sections 3 and 4 of the FAA, authorize courts to stay trial and order the parties to proceed with arbitration per the terms of their binding agreement. 9 U.S.C. §§ 3-4.

---

at 716 (quoting *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 303 (6th Cir. 2008)). Accordingly, the court relied on cases applying the FAA and resolved the case by interpreting the FAA.

Second, at the conclusion of arbitration proceedings, courts may review the final arbitration award. Section 9 of the FAA allows parties to seek an order from the court to confirm the arbitration award. Sections 10 and 11 of the FAA define the limited circumstances where courts may vacate, modify, or correct an arbitration award.

In evaluating these provisions, the *Savers* court found it significant that the FAA is silent regarding judicial review between gateway disputes and review of the final award. It recognized that other circuit courts have interpreted this silence as precluding interlocutory review. *Savers*, 748 F.3d at 717-18 (citing *Blue Cross*, 671 F.3d at 638; *Gulf*, 304 F.3d at 488; *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999); *LaPrade v. Kidder Peabody & Co.*, 330 U.S. App. D.C. 386, 146 F.3d 899, 903 (1988); *Michaels*, 624 F.2d at 414). The *Savers* court concluded that under the FAA's framework, the trial court is not authorized to intervene in the ongoing arbitration proceedings between resolution of gateway disputes and review of the final arbitration award. We agree.

Burgess argues that judicial relief for a breach of the agreement is warranted under the language of section 2 of the FAA. Section 2 of the FAA states, "[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. Burgess contends that section 2 of the FAA authorizes mid-arbitration breach challenges because rescission is an equitable remedy for a material breach of contract. This argument misinterprets the import of section 2 of the FAA.

The United States Supreme Court has recognized that "[s]ection 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Under this provision, courts may determine "gateway disputes" where the question is whether the parties have submitted a particular dispute to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). Common gateway disputes concern enforceability of the agreement, such as unconscionability challenges or disputes over which parties are bound by the agreement. These are all questions for the judge.

Burgess cites no case where a court provided relief, let alone rescission, once arbitration commenced. The *Savers* court rejected the notion that section 2 of the FAA authorizes interlocutory judicial review during arbitration proceedings. The court noted that section 2 exists to place arbitration agreements on the same footing as any other contract, subjecting the agreements "to rescission or invalidation if

there is a defect in the underlying contract." *Savers*, 748 F.3d at 719. However, "[n]othing in the text or history of the FAA suggests that § 2 was intended to displace § 10's limitation on judicial review of non-final awards." *Savers*, 748 F.3d at 720.

Cases do exist where courts ruled on rescission challenges, but such cases involve rulings made before arbitration commenced. Burgess relies on *Hooters*, 173 F.3d at 938-41, to establish that courts may rescind arbitration agreements during arbitration. In *Hooters*, the Fourth Circuit permitted judicial inquiry and rescinded the arbitration agreement. In that case, a party materially breached the agreement by promulgating unfair and one-sided rules for arbitration when it had a contractual obligation to draft rules in good faith. The court clarified, "[W]e only reach the content of the arbitration rules because their promulgation was the duty of one party under the contract. The material breach of this duty warranting rescission is an issue of substantive arbitrability and thus is reviewable *before* arbitration." *Hooters,* 173 F.3d at 938-41 (emphasis added) (resolving the challenge on review of a motion to compel arbitration). The outcome in *Hooters* is inapplicable here because Burgess is challenging the agreement during arbitration.

The Ninth Circuit also reviewed a breach of contract challenge under section 2 of the FAA where an employer initially refused to arbitrate per the terms of its own arbitration agreement, forcing the employee to file a lawsuit. *Brown v.*

*Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005). There, the employer moved to compel arbitration, which the court denied. The court held that the employer's refusal to arbitrate constituted a breach of the agreement, rendering the agreement unenforceable. *Brown* also does not control because in that case, the breach of contract challenge was raised before—not during—arbitration. Accordingly, we hold section 2 of the FAA does not authorize the court to resolve a breach of the arbitration agreement challenge during ongoing arbitration.

Further, limiting judicial involvement during ongoing arbitration proceedings is consistent with the underlying intent of the FAA. Arbitration agreements are contracts that establish the parties' agreement to resolve their dispute in arbitration, instead of in court. In *AT&T Mobility LLC v. Concepcion*, the United States Supreme Court recognized that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). The FAA provisions afford parties discretion to design arbitration processes "to allow for efficient, streamlined procedures tailored to the type of dispute." *AT&T*, 563 U.S. at 344. "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans*

*LLC v. Sutter*, 569 U.S. 564, 568-69, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013) (quoting *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)). Various circuit courts have opined that permitting interlocutory judicial review prior to the conclusion of arbitration would undermine the benefits of arbitration. *See Savers*, 748 F.3d at 718 (citing the Seventh, Fifth, and Second Circuits). If judicial review were allowed, the trial court would sit in an appellate capacity regarding any arbitral decision, resulting in significant delays and increased costs for parties.

Once arbitration begins under the FAA, the court's authority to resolve the dispute is transferred to the arbitrator. Judicial intervention is generally precluded during arbitration proceedings. The language, framework, and underlying intent behind the FAA confirm that generally courts are limited to ruling on gateway disputes, such as whether the arbitration clause is enforceable, and addressing the award at the conclusion of arbitration.

This case falls squarely within the circumstances where judicial review is precluded under the FAA. Burgess and Lithia are engaged in ongoing arbitration. Neither party challenged the validity of the arbitration agreement beforehand and the final arbitration award has not yet been issued. The court may not intervene and rescind the arbitration agreement when the case is between those two stages. Burgess essentially challenges the arbitrator's interlocutory discovery ruling and

asks us to determine whether the ruling comports with the FRCP. This is the very type of review that the FAA aims to prevent. Because Burgess seeks to terminate and rescind the ongoing arbitration based on those grounds and an alleged breach of the arbitration agreement that occurred during arbitration, the superior court is precluded from reviewing her challenge.

## CONCLUSION

We affirm the superior court's order, denying Burgess's motion to terminate arbitration. When the parties elect to resolve their dispute through arbitration under the FAA, courts are generally limited to determining enforceability disputes before arbitration begins and reviewing arbitration awards when arbitration is complete. The trial court properly determined that it was without authority to resolve Burgess's challenge. We affirm and remand for further proceedings consistent with this opinion.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Gonzalez, J.

Whitener J.